## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

EDUARDO S.,

                                                    Plaintiff,

                v.                                                         1:23-CV-815
                                                                           (DNH/MJK)

MARTIN J. O'MALLEY,

                                                    Defendant.

---

JUSTIN GOLDSTEIN, ESQ., for Plaintiff
GEOFFREY M. PETERS, Special Asst. U.S. Attorney, for Defendant

MITCHELL J. KATZ, U.S. Magistrate Judge

TO THE HONORABLE DAVID N. HURD, United States District Court Judge:

### REPORT-RECOMMENDATION

Plaintiff commenced this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security, denying his application for benefits. Plaintiff did not consent to the jurisdiction of a Magistrate Judge (Dkt. No. 4), and this matter was therefore referred to me for Report and Recommendation by United States District Court Judge David N. Hurd, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). Both parties filed briefs, which the court treats as motions under Federal Rule of Civil Procedure Rule 12(c), in accordance with General Order 18.

## I.    PROCEDURAL HISTORY

On July 23, 2020, Plaintiff protectively filed an application for Supplemental Security Income ("SSI"), alleging disability beginning on October 23, 2011.

1

(Administrative Transcript ("T") 161, 390-96).  Plaintiff's application was denied initially on December 22, 2020 (T. 161, 236-47), and upon reconsideration on March 5, 2021 (T. 181, 251-62).  On October 20, 2021, Administrative Law Judge ("ALJ") Michelle S. Marcus conducted a hearing during which Plaintiff and vocational expert ("VE") Tanya M. Edghill testified.  (T. 45-83).  Plaintiff amended his alleged onset date to July 23, 2020. (T. 50, 626-27). On January 10, 2022, the ALJ issued a decision denying Plaintiff's claim.  (T. 13-44).  This decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on May 9, 2023.  (T. 1-8).

## II.    GENERALLY APPLICABLE LAW

### A.    Disability Standards

To be considered disabled, a Plaintiff seeking DIB or Supplemental Security Income benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the Plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

2

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The Plaintiff has the burden of establishing disability at the first four steps. However, if the Plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review "– even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448. "To determine on appeal whether an ALJ's findings are supported by substantial

3

evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Id.  See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g.*, *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]").  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  **FACTS**

Plaintiff was born in 1967, 53 years old as of the alleged onset date of July 23, 2020, and reached the age of 55 years old on March 30, 2022. (T. 551). Plaintiff has a high school education. (T. 557). He worked in a grocery store from 1997 to 2007. (T. 397-410, 416-17, 437-44, 529-38, 580-88).  At the time of the administrative hearing, he lived in a two-floor house (with a basement) with a roommate. He does not have a driver's license.

Plaintiff alleged to have severe impairments of, *inter alia*: (1) coronary arteriosclerosis status post myocardial infarction (MI); (2) diabetes mellitus (DM) with neuropathy and retinopathy; (3) positive ANA; (4) bilateral carpal tunnel

4

syndrome status post right carpal tunnel release on December 10, 2020; (5) osteoarthritis of the left knee; (6) arthritis of the bilateral feet; (7) right hallux valgus; (8) bilateral osteoarthritis of the thumbs; (9) left ulnar neuropathy; and (10) obesity. (T. 388, 556, 569-76, 626-27). The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 19-36). Rather than reciting this evidence the court will discuss the relevant details below as necessary to address the issues raised by Plaintiff.

## IV.  THE ALJ'S DECISION

The ALJ determined at step one of the sequential evaluation that Plaintiff has not engaged in substantial gainful activity since July 23, 2020, the alleged onset date, as amended. (T. 21). Next, the ALJ found that Plaintiff suffers from the following severe impairments: osteoarthritis of the left knee, arthritis of the bilateral feet, right hallux valgus, obesity, coronary arteriosclerosis status post remote 2011 myocardial infarction, left ulnar neuropathy, and bilateral carpal tunnel syndrome status post right carpal tunnel release, and bilateral osteoarthritis of the thumbs. (T. 21). At step three, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (T. 24).

At step four, the ALJ found that plaintiff had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 416.967(b) except he can
> sit at least six hours total with regular breaks during an eight-hour
> workday; can stand and walk each for 45-minute intervals for a daily
> total of four hours in combination; can occasionally bend at the waist

toward the floor but frequently perform stooping required to go from standing to seated position and to rise from a chair; can occasionally crouch, balance, and climb ramps and stairs; can occasionally kneel on the right knee, but can only "rarely," meaning five percent of a workday, kneel on the left knee and can rarely crawl; cannot climb ladders, ropes, and scaffolds or have exposure to unprotected heights; cannot operate dangerous machinery but can operate ordinary office machinery such as a photocopier and scanner; cannot perform commercial driving or operation of motorized vehicles on the job; and can frequently handle, finger, and feel.

(T. 25).

In making the RFC determination, the ALJ stated that she considered all of plaintiff's symptoms and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (*Id.*). The ALJ further noted that she considered "the medical opinion(s) and prior administrative medical finding(s)" pursuant to 20 C.F.R. § 416.920c. (*Id.*). After considering plaintiff's statements regarding his symptoms, along with the other evidence of record, the ALJ concluded that although plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (T. 26).

At step five, the ALJ found that considering the plaintiff's age, education, residual functional capacity ("RFC") as well as the VE's testimony, there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (T. 34). Accordingly, the ALJ concluded that plaintiff was not disabled. (*Id.*).

6

## V.     RELEVANT MEDICAL EVIDENCE

### A.     Matthew I. Stein, M.D.

From August 2017 through July 2020, Dr. Stein treated Plaintiff for left knee pain from knee osteoarthritis. (T. 1116-26, 1340-42, 1359-61, 1376-77, 1389-90). Cortisone injections were administered on August 8 and October 24, 2017 and January 2, 2018. (T. 1118, 1120, 1125).  A CT arthrogram of the left knee was noted on October 24, 2017 to reveal both medial and lateral femoral condyle full-thickness chondral defects with subchondral cysts. (T. 1120). On May 28, 2018, Plaintiff treated for left elbow and left knee pain. (T. 1116-17).  On examination, there was diffuse tenderness of the left knee. There was tenderness to palpation over the lateral epicondyle of the left elbow. There was also pain with resisted wrist and finger extension. He was additionally assessed with left elbow lateral epicondylitis.  (T. 117). Cortisone injections were administered into the left knee and left elbow. On January 29, 2019, Dr. Stein administered a repeat cortisone injection.  (T. 1389-90). On examination, there was diffuse tenderness of the knee.  (T. 1389).  On May 28, 2019, examination showed medial joint line tenderness and lateral joint line tenderness. (T. 1376).  Injections were administered. (T. 1376). On November 21, 2019, Dr. Stein administered an injection to the left knee due to stiffness, joint swelling, and constant and aching pain at a level of 4/10. (T. 1359-61). Plaintiff's pain level was 7/10 on February 13 and July 9, 2020.  (T. 1340, 1341). Plaintiff reported his pain and swelling was worse with activity. On August 11, 2021, Dr. Stein treated

7

Plaintiff for significant left knee pain and another injection was administered. (T. 1700).

Dr. Stein provided a "check the box" medical source statement dated July 9, 2021, to which he added "no prolonged standing/walking." He checked the box indicating "patient need[s] a job shifting positions *at will* from sitting, standing or walking."  (T. 1675-77).

### B.    Leonard M. Gelman, M.D./Corey Ennis, PA-C

Plaintiff treated with Dr. Gelman and Corey Ennis, PA-C for primary care concerning a variety of medical issues including diabetes mellitus, sleep apnea, osteoarthritis of the knee, right hand pain, foot pain, neuropathy, edema of the feet and left knee pain. (T. 1278-1315, 1336-40, 1631-45, 1685-89). Gelman/Ennis diagnosed pain and neuropathy of the feet, and provided medical treatment for the same. (T. 1278-1315, 1336, 1639). Notes for treatment provided on January 15, 2020 include "Foot pain, b/l, and R arm pain, likely DM neuropathy." (T. 1298). On examination, Plaintiff exhibited "mild non-pitting edema over the feet and the ankles [bilaterally]." (T. 1633, 1637, 1641).

On December 30, 2020 PA Ennis reported that Plaintiff had significant improvement of his right wrist pain following carpal tunnel release surgery. (T. 1641). Plaintiff reported foot pain with swelling, and PA Ennis observed non-pitting edema over the feet and ankles bilaterally. (T. 1641). She made this same observation at subsequent examinations, including February 24, 2021 and July 7, 2021. (T. 1633, 1687).

Dr. Gelman provided a "check the box" medical source statement dated May 28, 2021, noting diagnoses: "Neuropathy, Hands + feet." He added: "Neuropathy in

8

this case has been resistant to treatment and difficult to control." Like Dr. Stein, Dr. Gelman checked the box indicating that "the patient need[s] a job that permits shifting positions *at will* from sitting, standing or walking." (T. 1569-71).

### C.    Drs. Ferrara and Rosas

On November 11, 2020, Dr. Ferrara examined Plaintiff and found Phalen's test was positive on the right and Tinel's sign was positive bilaterally. (T. 1543). Dr. Ferrara performed carpal tunnel release surgery on the right wrist on December 10, 2020. (T. 1545, 1555-56).

On December 31, 2020, Dr. Rosas treated Plaintiff for bilateral foot pain. On examination, there was tenderness to palpation of the dorsal first MTP bilaterally. (T. 1547).  X-rays revealed some mild arthritic changes in the forefoot. (T. 1547). Injections were administered to the bilateral first MTP joint. (T. 1548).

On April 26, 2021, Dr. Ferrara treated Plaintiff for left wrist pain. On examination there was tenderness to palpation over the trapeziometacarpal joint. CMC grind test was positive. X-rays of the left hand showed left thumb CMC arthritis. An injection was administered to the left basal joint. (T. 1551-52).

On April 29, 2021 Dr. Rosas treated Plaintiff for bilateral foot pain. (T. 1553-54). On examination there was tenderness to palpation of the dorsal foot and first MTP. Bilateral orthotics were prescribed. (T. 1554, 1702-03).

### D.    Joy M. Black, RPA

RPA Joy Black treated Plaintiff for pain and paresthesia of the right upper extremity and pain in both feet. A December 2018 note recorded "positive ANA 1:80 spindle pattern." On physical examination, she found "tenderness bilateral MTP joints

9

and squeeze test. Also tender bilateral ankles." (T. 1244). Joy Black referred the Plaintiff for a nerve conduction study or electromyography (EMG).

The EMG study conducted in November 2018 of Plaintiff's lower extremities "revealed no significant abnormality or evidence of neuropathy at that time." (T. 1527). The February 20, 2019 report of the EMG study of Plaintiff's upper extremities was positive for neuropathy of both wrists, consistent with carpal tunnel syndrome, positive for left mild ulnar neuropathy, negative for right ulnar neuropathy, negative for cervical radiculopathy or brachial plexopathy bilaterally. (T. 1186-87). RPA Black's notes reflect: "Repeat EMG study of the lower extremities in June [2020] nonrevealing." (T. 1527).

### E.    Najib Azad, D.O.

On October 22, 2020, Dr. Azad performed a consultative examination of the Plaintiff. (T. 1485-91). On examination, he observed plaintiff's squat was 50%. (T. 1487). Lumbar spine range of motion was limited to 70 degrees for flexion, neutral for extension, 15 degrees for lateral flexion bilaterally, and 30 degrees rotary movement bilaterally. (T. 1488). Left knee flexion was limited to 90 degrees. There was lateral tenderness of the left knee. Dr. Azad assessed: mild limitations with sitting and standing; mild limitations with bending; moderate limitations with lifting and carrying; moderate limitations with kneeling; no limitations reaching or handling; and avoid strenuous activity give his history of an MI. (T. 1489).

### F.    S. Putcha, M.D./M. Kirsch, M.D.

On December 16, 2020, State agency reviewing physician Dr. Putcha assessed that plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for a total of about 6 hours in an 8-hour workday, sit for a total of

about 6 hours in an 8-hour workday, occasionally climb ladders/ropes/scaffolds, occasionally kneel, and must avoid even moderate exposure to hazards (machinery, heights, etc.). (T. 151-60). These findings were affirmed upon reconsideration by State agency reviewing physician, M. Kirsch, M.D., on March 4, 2021. (T. 173-77).

## VI.   ISSUES IN CONTENTION

Plaintiff raises the following arguments in support of his position that the ALJ's decision is not supported by substantial evidence:

A. The ALJ did not correctly analyze the supportability and consistency factors regarding the opinions of Drs. Stein and Gelman.

B. The ALJ misapplied the regulations concerning the diagnosis of lower extremity neuropathy.

C. The ALJ did not support "frequent handling" element of RFC with medical evidence of record and the RFC element concerning manipulative abilities (fingering, handling) was unsupported in the medical evidence.

D. The assessments prepared by the reviewing physicians were not the product of due consideration and were based on an incomplete record.

(Plaintiff's Brief ("Pl.'s Br.") at 12-25) (Dkt. No. 14).  Defendant argues that the ALJ's decision was supported by substantial evidence, and the complaint should be dismissed. (Def.'s Br. at 5-24) (Dkt. No. 20).  Plaintiff filed a reply brief. (Dkt. No. 21).  For the following reasons, the court agrees that the Commissioner's decision denying disability benefits should be affirmed, as it is supported by substantial evidence and free from legal error.

## VII.   ANALYSIS

To the extent Plaintiff argues that the ALJ did not identify evidence in the record supporting the RFC, this argument subsumes the Plaintiff's specific claims of error and is addressed below.

### A.    The ALJ sufficiently analyzed the supportability and consistency factors regarding the opinions of Drs. Stein and Gelman.

Plaintiff argues that the ALJ was inconsistent in her analysis of the persuasiveness of the opinions of these two treating providers. (Pl. Br. at 15). Specifically, Plaintiff argues that "Dr. Stein only treated Plaintiff's left knee[1] and Plaintiff had treatment with multiple other specialists for other severe impairments." (Pl. Br. at 16). Nevertheless, at the request of the Plaintiff, Drs. Stein and Gelman provided medical source statements. (T. 1675-77, 1569-71).[2]  The forms are the same; the opinions are different in some material respects. The ALJ found the Stein opinion more persuasive in some regards and provided a detailed analysis of the rationale for her conclusions. The ALJ found the Gelman opinion not persuasive in most regards and offered a detailed analysis in support of her conclusions.

Plaintiff asserts that the ALJ erroneously rejected the Gelman opinion because "the form lacked explanations" and "if the form was sufficient to support Dr. Stein's

---

[1] Dr. Stein practiced at OrthoNY. Other members of that practice did treat Plaintiff and their medical evidence is discussed above.

[2] There were no other medical source statements from Plaintiff's specialty treating providers.

opinion, then the form was sufficient to support Dr. Gelman's assessment." (Pl. Br. at 16). This argument is without merit.

In her decision, the ALJ explicitly discussed each of the medical opinions of record, including those provided by plaintiff's treating providers. With respect to Dr. Gelman's opinion, the ALJ recognized that his conclusions were "without cit[ation to] specific clinical or laboratory diagnostic support," and that "Dr. Gelman did not justify these opinions . . . . " (T. 32). These statements cannot fairly be read to be a judgment about the inadequacy of the form, as immediately before and after this statement, the ALJ discusses the medical evidence of record and the lack of support in the same found in Dr. Gelman's treatment notes, as well as the treatment notes of other providers.

Dr. Gelman's medical source statement includes two diagnoses: neuropathy of hands and neuropathy of feet. (T. 1569). His opinion that Plaintiff is incapable of even "low stress" jobs is supported by the statement that Plaintiff suffers "severe pain." (T. 1569).

### 1.    Lower extremity neuropathy/feet

The ALJ observed that peripheral neuropathy (clearly in reference to the lower extremities) was not medically determinable. She found that Dr. Gelman and PA Ennis prescribed gabapentin (T. 22), based on Plaintiff's complaints of foot pain, noting that lower extremity EMG studies conducted in 2019 and again in 2020 were

negative. (T. 22).  The ALJ further noted that plaintiff denied peripheral neuropathy at a physical examination on May 27, 2021. (T. 22, 1702).

In addressing the lack of support for many of Dr. Gelman's opinions, the ALJ summarized the medical evidence of record that she described in detail in the pages prior, by writing: "The claimant has no evidence of gait disturbance, lower extremity weakness, spasm, uncontrolled edema or other swelling, sensory deficits, strength deficits, coordination deficits, or symptom exacerbations requiring emergency medical care." (T. 32). She continued: "In the absence of demonstrated abnormalities in gait, stance, reflexes, sensory, ranges of motion strength, and coordination, Dr. Gelman's assessment is unsupported." (T. 32). Plaintiff does not take issue with this summary or with the ALJ's recitation of the medical evidence of record.

Plaintiff is correct to note that the ALJ did find as unsupported and unjustified Dr. Gelman's opinion that the claimant needed to "shift positions at will." (T. 32).  It is also true that Dr. Stein gave the same opinion. (T. 1675). The court concludes however that there is no inconsistency in this regard as the ALJ did not mention this restriction in assessing Dr. Stein's statement. The ALJ did not find Dr. Stein's opinion persuasive on every issue; she found it more persuasive than the consultants' assessments in some regards. Similarly, the ALJ found Dr. Gelman's opinion "not persuasive in most regards," but there were elements of his opinion that she found

"generally consistent with others of record and persuasive for the same reasons." (T. 32-33).

Contrary to Plaintiff's assertion, the ALJ did in fact explain the decision to adopt only portions of the medical opinions, and not only reconciled the decision to do so in respect of all the medical statements, but also with the medical evidence of record. Dr. Stein opined that the Plaintiff should "avoid prolonged standing." (T. 1677). Using the medical source statement form that Plaintiff provided to him, Dr. Stein also opined that the Plaintiff could stand for 45 minutes, and he could stand/walk for about four hours. (T. 1675). It was appropriate for the ALJ to take the specific limitations provided by Dr. Stein as an elucidation of the meaning of the phrase "avoid prolonged standing." The 45 minute and four-hour intervals are incorporated into the RFC. (T. 25). If there is any inconsistency between sitting/standing/walking and "changing positions at will," it was addressed by the ALJ when she rejected as unsupported Dr. Gelman's opinion concerning "changing positions at will," and as she did not specifically address that same opinion given by Dr. Stein, it is fair to conclude that she necessarily rejected his opinion for the same reasons. If there was error in the ALJ's failure to also address this element of Dr. Stein's opinion, the error was harmless.

Plaintiff also assigns "factual" error with respect to the presence of edema. (Pl. Br. at 20). There was no "factual" error. The ALJ wrote: " . . . the record does not

15

objectively establish longitudinal edema or even the claimant's allegations of swelling in his legs and feet…" (T. 27). The ALJ continued: "During February 2021 follow-up for his hand, the claimant was observed to have some 'mild' edema over the feet and ankles, though it was nonpitting and there no indication that it affected his ability to walk." (T. 30). The ALJ noted "two subsequent examinations in April and July 2021 continued to reveal the same benign clinical findings and without indication that his 'mild' nonpitting edema affected the use of his orthotics. (T. 30, 1685, 1687, 1693). The ALJ was plainly aware that there were medical notes reflecting the signs of edema, noting that there was no medical evidence of record to reflect that the "benign" edema had created any impairment of function.

### 2.    Neuropathy of the hands

The ALJ found that the remainder of Dr. Gelman's assessment (concerning capacity to lift, carry, push and pull, etc.) is generally consistent with other opinions of record and persuasive for the same reasons. (T. 33).  Dr. Gelman also opined that the claimant could only "rarely" use his hands to grasp, turn, and twist objects, perform fine manipulations, or reach in any direction. (T. 1570-71). In finding this opinion unpersuasive, the ALJ found that Dr. Gelman's opinion was not supported by objective clinical or laboratory diagnostic evidence of record. The ALJ noted that the treating providers found positive Tinel and Phalen's signs, but observed that the carpal tunnel release surgery on the right wrist was successful and there is no objective

16

evidence that he was referred for surgery on his left wrist. Finally, in referring to the medical evidence both before and after the carpal tunnel release surgery, the ALJ summarized and cited to Dr. Gelman's treatment records "that clinical testing otherwise reflected bilaterally intact grip strength, ranges of motion, dexterity with no demonstrated abnormalities in the elbows or shoulders." (T. 33).

### B. The ALJ did not misapply the regulations concerning the diagnosis of lower extremity neuropathy.

Plaintiff's argument that the ALJ "quibbled over the actual diagnoses of Plaintiff's foot pain" is misplaced, as is the assertion that "the ALJ failed to acknowledge many of the positive findings within the notes cited." (Pl. Br. at 22). The Plaintiff asserts that the ALJ erred in finding that objective medical tests were the only objective evidence to support a diagnosis of neuropathy, citing to *Newsome v. Astrue*, 817 F. Supp. 2d 111, 127 (E.D.N.Y. 2011). In *Newsome*, the court held in respect of alcoholic neuropathy "the requirement that the Plaintiff produce the results of laboratory tests as the only form of objective evidence to support a diagnosis of neuropathy is not supported by the regulations or the record." *Id*. In *Newsome* there were negative laboratory tests (EMG), and there was medical evidence which recorded the <u>signs</u> of alcoholic neuropathy, including impaired heel to toe gait and impaired toe/heal walking, a tender spot in the lower dorsal spine and a muscle spasm in the dorsal region. *Id.*

17

Here, there were two negative lower extremity EMG/nerve conduction studies. In reviewing the medical evidence the ALJ concluded that neuropathy of the feet was not objectively determined, noting that the evidence of neuropathy identified by the medical providers was based on "subjective reports from the Plaintiff." (T. 22). Indeed, Dr. Gelman stated the support for his opinion as "severe pain" (T. 1569), not "edema," and Plaintiff does not cite to any medical evidence which recorded the signs of lower extremity neuropathy, as distinct from other issues related to the foot including, for example, pain bilaterally in the first MTP joint, which was treated by injections, and osteoarthritis of the feet with right hallux valgus, which were plainly considered by the ALJ. (T. 24, 28). The holding in *Newsome* does not inform the analysis here as, unlike in *Newsome,* the ALJ did not find signs of lower extremity neuropathy, and Plaintiff cites to none.

Additionally, the ALJ noted that "the opined postural restrictions [in the RFC] are reasonable when considering isolated references to diminished knee range of motion or mild nonpitting edema in the feet in the light most favorable to the claimant." The ALJ also wrote that "while the record does not objectively substantiate the claimant's allegations of significant swelling in the feet preventing the use of orthotics, I do find reasonable the opined restrictions and, again, have found greater restriction than Dr. Stein opined, . . . ." (T. 31).

18

**C.    The ALJ's RFC determination concerning manipulative abilities was supported by the medical evidence.**

Plaintiff argues that because the ALJ found unpersuasive Dr. Stein's opinion regarding "frequent" handling, and there is no other opinion containing this restriction, it was error for the ALJ to make this unsupported finding in the RFC.  (Pl. Br. at 19).  This is a mischaracterization of the ALJ's decision.  The ALJ found Dr. Stein's opinion that Plaintiff could "frequently" perform head and neck movements to be unpersuasive because there was no record evidence of clinical abnormalities, and Plaintiff does not object to that conclusion. (T. 32). The ALJ surmised that the medical source statement form may be the root of the problem because it "does not offer a default option to opine the absence of any restriction." (T. 31). Carrying this surmise further, the ALJ observed that the absence of a different option might have been the reason for Dr. Stein's opinion with regard to "frequently" performing hand manipulations, but she then notes that notwithstanding the absence of demonstrated clinical abnormalities with regard to the use of the shoulder or elbows to reach, the medical evidence of record does reflect "bilateral carpal tunnel syndrome, left ulnar neuropathy, and arthritis in the first carpometacarpal joints of the thumbs that do reasonably support a restriction to "frequent" use of the hands." (T. 32)(emphasis added).  As a result, the ALJ concluded that even though the clinical notes before and immediately after the carpal tunnel release surgery do not reflect deficits in strength, dexterity, or ranges of motion, such restrictions [to frequent use of the hands] are

19

reasonable, and the opinion [of Dr. Stein] is persuasive in this regard." (T. 32).

Therefore, Plaintiff's argument that the RFC restriction to frequent manipulative

abilities lacks medical record evidence support is without merit.

### D.    The assessments prepared by the reviewing physicians were duly considered and based upon substantial evidence.

In his initial brief, Plaintiff challenges the credibility of the assessments

provided by reviewing physicians Drs. Putcha and Kirsch, arguing that their opinions

"are not their opinions, and they merely signed off on the analyst's review of the

medical evidence." Plaintiff asserts that "there is no indication that [these doctors]

independently reviewed the record and no indication that any portion other than the

signature is his or her medical opinion." (Pl. Br. at 23).  The court rejects this

argument. The medical experts' reports reflect that they reviewed and summarized

several pages of evidence, crafted an RFC based on that evidence, and affixed their

signatures. (T.152-56, 173-77). There is no evidence to support Plaintiff's assertion

and the signature of a doctor to a medical report or record has legal significance, the

Plaintiff's speculation notwithstanding.

In Plaintiff's reply brief, he raises for the first time, that Drs. Putcha and Kirsch

"did not review the opinions of Drs. Stein and Gelman, arguing that remand is

required when the reviewing physicians did not have an opportunity to review later

evidence supporting greater limitations," citing to *Raymond M. v. Comm'r,* No. 5:19-

CV-1313 (ATB), 2021 WL 706645, at*10 (N.D.N.Y. February 22, 2021) and *Bridget*

20

*P. v. Comm'r*, No. 3:21-CV-654 (CFH), 2023 WL 2402782, at *11 (N.D.N.Y. March 8, 2023). It is apparent from the dates of the relevant documents that Drs. Putcha and Kirsch could not have reviewed the opinions of Drs. Stein and Gelman. It is also true that the consultants did not review the medical records that were created after the dates of their reports. These facts were laid out in the Plaintiff's brief, but the arguments based on these facts were not presented.

A party may not introduce arguments for the first time in a reply brief. *Krause v. Kelahan*, 575 F. Supp. 3d 302 (N.D.N.Y. 2021). If the court was to consider this argument, it would find no error. First, Plaintiff's primary arguments were addressed to the ALJ's consideration of the opinions of Drs. Stein and Gelman, two of Plaintiff's treating providers and the authors of the medical source statements discussed above. Second, while the ALJ found the assessments of Drs. Putcha and Kirsch to be generally persuasive, she found "greater restrictions than these consultants opined." (T.31). Third, as Plaintiff argued in his brief, the ALJ "generally relied upon the opinion of" Dr. Stein (Pl. Br. at 16), who was one of Plaintiff's treating providers and the author of a medical source statement. In this regard the ALJ found Dr. Stein's functional assessment "more persuasive than the consultants' assessments in some regards." (T. 31).

The cases that assign error generally upon the failure of the agency consultant to review the entirety of the medical record, do so where the ALJ "relied on a state

agency medical consultant's opinion instead of a treating physician's opinion," *Jazina v. Berryhill*, No. 3:16-CV-01470, 2017 WL 6453400, at *7 (D. Conn. Dec. 13, 2017)(decided on regulations in effect prior to March 2017) (citing *Tarsia v. Astrue*, 418 F. App'x 16, 18 (2d Cir. 2011)), and relied heavily on the state agency consultant's opinion in determining the RFC, *Figueroa v. Saul*, No. 18-CV-4534, 2019 WL 4740619, at *29 (S.D.N.Y. Sept. 27, 2019).  Neither of these situations are present here.

In addition, there are cases that hold that it was not error for the ALJ to rely on a consultant's opinion, even if that opinion did not consider all of Plaintiff's evidence, where the additional evidence does not undermine the opinion or change the picture of Plaintiff's functioning, and the ALJ discussed the additional evidence. *Renee L. v. Comm'r of Soc. Sec.*, No. 5:20-CV-00991 (TWD), 2022 WL 685285, at *6-8 (N.D.N.Y. Mar. 8, 2022); *Renalda R. v. Comm'r of Soc. Sec.*, No. 3:20-CV-00915 (TWD), 2021 WL 4458821, at *9 (N.D.N.Y. Sept. 29, 2021)(subsequent mental health records did not change the picture of Plaintiff's mental functioning such that the ALJ could no longer rely on the consultant's opinion).

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiff's motion for judgment on the pleadings (Dkt. No. 14) be **DENIED;** and it is further

**RECOMMENDED,** that defendant's motion for judgment on the pleadings (Dkt. No. 20) be **GRANTED**; and it is further

**RECOMMENDED,** that the decision of the Commissioner be **AFFIRMED**, and plaintiff's complaint (Dkt. No. 1) be **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


Dated:  May 31, 2024

Mitchell J. Katz
U.S. Magistrate Judge